UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHELE DIROCCO, an individual,
and on behalf of all other similarly
situated individuals

Plaintiff,

v.                                                    Case No:  2:15-cv-552-FtM-99CM

VICTORY MARKETING AGENCY,
LLC and VINCENT ANTONIO,

Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon review of Defendant's Motion to
Compel Arbitration and Incorporated Memorandum of Law (Doc. 8) filed on October
14, 2015.   Plaintiff filed a Response to Defendants' Motion to Compel Arbitration and
Incorporated Memorandum of Law (Doc. 9) on October 29, 2015.   On November 10,
2015, with leave of Court, Defendants filed a Reply to Plaintiff's Response to
Defendant's Motion to Compel (Doc. 10), and on November 16, 2015 Plaintiff filed a
Surreply on Defendant's Motion to Compel Arbitration.   Doc. 13.   The motion,
therefore, is ripe for review.

---

[1] A party has fourteen days from this date to file written objections to the Report and
Recommendation's factual findings and legal conclusions.   A party's failure to file written
objections waives that party's right to challenge on appeal any unobjected-to factual finding
or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th
Cir. R. 3-1.

## Background

This action arises from Plaintiff's former employment as a staffing coordinator with Defendant Victory Marketing Agency, LLC.   Doc. 1 at 2.   Defendant Vincent Antonio is the President of Victory Marketing Agency, LLC.   Doc. 12-1.   On or about March 25, 2014, Defendants hired Plaintiff as a staffing coordinator.   Doc. 9 at 1. Plaintiff alleges that Defendants misclassified her as an exempt employee and denied her overtime pay.   Doc. 9 at 1.   According to Plaintiff, Defendant's illegal practices extended to other similarly situated individuals.   *Id.*   As such, on September 11, 2015, Plaintiff filed a four-count complaint, on behalf of herself and others similarly situated, against Defendants for violations of the Fair Labor Standards Act ("FLSA") and for unjust enrichment.   Doc. 1.

On October 14, 2015, Defendants filed the instant motion, seeking a stay of this proceeding and to compel arbitration.   Defendants have attached two separate agreements on which they rely.   Doc. 8, 11-15.   The first Agreement, entitled "Employment Agreement," contains an arbitration clause, which reads

> Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in Florida in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof. The prevailing party shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which that party may be entitled.

Doc. 8 at 13, ¶14.   Other relevant provisions of the Employment Agreement include the following

> **Services.** During the term . . . of this Agreement, Employee agrees to provide to Victory Marketing Agency any and all services that Victory

Marketing Agency reasonable (*sic*) requests from time to time to meet the needs of Victory Marketing Agency and/or one or more of Victory Marketing Agency's clients (collectively, the "Services").

> a. Employee agrees to use his or her best efforts to sell and promote Victory Marketing Agency's business and abide by Victory Marketing Agency's policies as they are communicated to Employee.

> b. Employee agrees to devote such time as is reasonably necessary to perform the Services.

> c. During the term of this Agreement, Employee agrees not to provide or sell any services or products to customers that are competitive with Victory Marketing Agency's services or products, or work for another employer concurrently, without obtaining Victory Marketing Agency's prior written consent.

**Compensation**. As compensation for Services performed under this Agreement, Victory Marketing Agency shall pay Employee the sum of $14/hour the first 60 days and $35,000/year following the onboarding and training period.

**Governing Law**. This Agreement shall be construed in accordance with, and governed by, the laws of the (*sic*) Florida.

**Entire Agreement**. This Agreement contains the entire understanding of the parties and supersedes all previous verbal and written agreements. There are no other agreements, representations, or warranties not set forth herein.

Doc. 8 at 13, ¶¶1, 3, 13, 19.   (Emphasis in original).   This Employment Agreement was signed by Plaintiff and Vincent Antonio on March 25, 2014.

The second agreement, entitled "Section 3 – Assigned Employee Notice and Acknowledgements" ("SOI Acknowledgement") is a document provided by Strategic Outsourcing, Inc. ("SOI").   Doc. 8 at 15.   SOI had a contractual relationship with Defendants to provide them payroll and benefit services to Defendants' employees. Doc. 9 at 2.   Plaintiff allegedly signed the SOI Acknowledgement electronically on

March 28, 2014.  Doc. 8 at 15.   The relevant part of the SOI Acknowledgement reads as follows

> I and SOI agree that: any dispute involving SOI, Company, or any benefit plan, insurer, employee, officer, or director of SOI or Company (all of which are beneficiaries to these Acknowledgments) arising from or relating to my employment, application for employment, or termination from employment will be resolved exclusively through binding arbitration . . . In addition: **I AND SOI MUTUALLY WAIVE ANY RIGHT TO JURY TRIAL**, and I agree to participate in any legal dispute with any Beneficiary only in my individual capacity, not as a member of a representative class or part of a class action . . . My agreements to arbitrate, waive jury trials, and participate only in my individual capacity are contracts under the Federal Arbitration Act and any other laws validating such agreements and waivers.
>
> SOI is not responsible for any obligation Company has to me such as promises or contracts regarding length or terms of my employment, my pay or other consideration, or benefits. If company has not provided funds or complied with its agreement with SOI, in no event will SOI be required to pay me more than the minimum wage required by law while the agreement with Company was in effect. Any obligation of SOI ceases when its agreement with Company terminates.

Doc. 8 at 15.   (Emphasis in original).   "Company" is defined as "[t]he organization for which you perform services."   *Id*.

Plaintiff acknowledges that on the day she was hired, on or about March 25, 2015, Defendants presented her with an Employment Agreement, which Plaintiff signed by hand.  Doc. 9 at 1-2.   Plaintiff, however, refutes ever signing the SOI Acknowledgement, electronically or by hand.   *Id*. at 2.   In her opposition and her personal Declaration attached thereto, she states that the only SOI documents that she signed are the Personal Health Questionnaire and "documents to effectuate payroll and enrolment in benefits".   *Id*., Doc. 9-1 at ¶6, 9-3.   She further states that

- 4 -

she understood the arbitration clause in the Employment Agreement to apply only to contractual claims, and not wage and hour claims.   Doc. 9-1 at ¶4.

In contrast, Defendants have filed the Declaration of Vincent Antonio.   Doc. 12-1.   Defendant Antonio states that on March 25, 2014 he and Plaintiff reviewed and signed the Employment Agreement.   *Id.* at ¶4.   On that same day, he e-mailed Plaintiff several electronic documents, including the SOI Acknowledgement, for her to review, execute, and return to him.   *Id.* at ¶5.   On March 28, 2014, Plaintiff attempted to return the executed documents using "Adobe EchoSign," but the documents appeared blank.   *Id.* at ¶6.   Defendant Antonio attached an e-mail sent by Plaintiff to him on March 28, 2014 at 12:45 PM indicating that Plaintiff attempted to return some documents using "Adobe EchoSign."   Doc. 12-3.   The undersigned is unable to determine by viewing this e-mail which documents Plaintiff was attempting to sign, but the Declaration attaches as exhibits the new hire documents, one of them being the SOI Acknowledgement, that were linked to her e-mail.[2]   Doc. 12-4. Defendant Antonio attaches another e-mail sent by Plaintiff to him on March 28, 2014 at 12:54 PM which states "Hi Vinny! I'm trying to email the new hire documents you sent to me and I'm not sure if they are going through. Please let me know if they came through blank and I'll try to figure it out."   Doc. 12-5.   Defendant Antonio further states that "[w]hen she was unsuccessful in returning the executed New Hire

---

[2] In a footnote in his Declaration, Mr. Antonio states '[i]f the Court so requests, the email . . . can be forwarded to the Court so that the Court may follow the instructions in the email, which state "Click <u>here</u> to download the document." This will verify the fact that the word "here," contained in the instructions in the . . . email, is the link to the documents attached as Exhibit C, including the SOI acknowledgment."

documents to me by e-mail, she executed them electronically, printed them out, and returned them personally to me. . . Neither I or anyone to my knowledge, filled in any of Ms. Dirocco's forms." Doc. 12-1 at ¶8, 9.

Defendants argue that Plaintiff entered into two valid arbitration agreements, that her claims are arbitrable under each agreement, that Defendants did now waive their rights to arbitrate, and that Plaintiff is required to arbitrate her claims on an individual basis. Doc. 8. On the other hand, Plaintiff argues that the Employment Agreement does not require arbitration of her statutory claims and only requires arbitration if the terms of the agreement itself were in dispute. Doc. 9 at 5-6. Plaintiff vigorously denies signing the SOI Acknowledgement in any manner, argues that she never assented to the terms of the SOI Acknowledgement, and therefore the SOI Acknowledgment is not a valid contract under Florida law. Docs. 9, 13. Plaintiff argues that even if signed, the SOI Acknowledgement is not a valid agreement to arbitrate as between Plaintiff and Defendants, and Defendants are not third-party beneficiaries under the SOI Acknowledgement. Doc. 9 at 11-12. Alternatively, Plaintiff argues that the Defendants' contractual relationship with SOI was terminated on April 4, 2015, and, as such, so too was the SOI Acknowledgment and any obligation to arbitrate. *Id.* at 12. To the latter argument, Defendants respond that Plaintiff has only alleged that she was misclassified as exempt and deprived lawful wages while she worked as a staffing coordinator. On September 2014, Plaintiff was promoted to account manager. Doc. 12 at 3. The only relevant

timeframe, according to Defendant, is from March 2014 through September 2014, during which time the SOI Acknowledgment was in force.  Doc. 12 at 3-4.

## Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As provided by the FAA, any party aggrieved by the failure or refusal of another to arbitrate under a written agreement, may petition the Court to direct that arbitration proceed.  9 U.S.C. § 4.  The Supreme Court's precedent establishes a "healthy regard for the federal policy favoring arbitration," resolving any doubts as to the scope of arbitrable issues in favor of arbitration, whether the problem is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).  In ruling on a motion to compel arbitration, courts consider three factors: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived.  *Dukes v. Sai Fort Myers B, LLC*, No. 2:14-CV-287-FTM-38, 2015 WL 3650804, at *2 (M.D. Fla. June 11, 2015); *Florida Farm Bureau Ins. Cos. v. Pulte Home Corp., Inc.*, No. 8:04-cv-2357-T-EAJ, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005).  With this backdrop in mind, the Court will analyze whether the parties agreed to arbitrate the issues at hand under either agreement.

I.    **The Employment Agreement**

State law governs whether an enforceable agreement to arbitrate exists. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). "Federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Id.* Under Florida law, the three elements for a valid contract are offer, acceptance, and consideration. *SCG Harbourwood, LLC v. Hanyan*, 93 So. 3d 1197, 1200 (Fla. 2nd DCA 2012). Acceptance requires mutual assent to the terms of the contract. *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989) ("Mutual assent is an absolute condition precedent to the formation of the contract. Absent mutual assent, neither the contract nor any of its provisions come into existence"). Florida courts have recognized that the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same." *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2nd DCA, 2005); *see also Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008). Whether or not a party has agreed to arbitrate is a question for the court. *AT& T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, (1986). Plaintiff admits that she entered into an Employment Agreement with Defendants. A review of the Employment Agreement shows Plaintiff's handwritten signature and Defendant Vincent Antonio's handwritten signature. The Employment Agreement contains an arbitration clause and a governing law clause. Therefore, pursuant to Florida law, a valid agreement exists.

The parties disagree as to the scope of the arbitration clause. "Courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." *Caley*, 428 F.3d at 1367 (citing cases). In *Caley*, the Eleventh Circuit affirmed a district court order compelling arbitration of an FLSA claim. 428 F.3d 1359. Generally, courts have found that arbitration agreements that cover all claims relating to compensation or, more broadly, the employee's employment include FLSA claims. *Shepherd v. Timber Greens Cmty. Ass'n, Inc.*, No. 808-CV-1706-T-33EAJ, 2008 WL 4844759, at *1 (M.D. Fla. Nov. 6, 2008); *Bailey v. Ameriquest Mortgage Co.*, 346 F.3d 821, 822 (8th Cir. 2003); *Sanchez v. Nitro-Lift Techs.*, L.L.C., 762 F.3d 1139, 1142 (10th Cir. 2014). In other words, an arbitration agreement need not specifically mention FLSA claims in order for such claims to come within the purview of an arbitration agreement. For instance, one court in this district has ruled that a plaintiff's FLSA claims were covered by an arbitration agreement which required arbitration for "any claims that arise between [employee] and [employer] . . . [t]his includes any claims concerning compensation, employment, sexual or other types of harassment, or termination of employment." *Shepherd,* 2008 WL 4844759, at *1.

Courts in other circuits similarly have held that FLSA claims were covered by arbitration agreement even though they were not specifically mentioned in the arbitration agreements. The Eighth Circuit held that "[t]he Arbitration Agreement clearly encompasses the FLSA claims at issue, for the agreement broadly applies to all account executive claims, whether contractual or statutory, 'for wages or other

compensation due.'" *Bailey,* 346 F.3d at 822.   The Tenth Circuit ruled in favor of arbitrability of FLSA claims where the language of the arbitration clause contained in a "Confidentiality/Non-Compete Agreement" included "any dispute" between employer and employee and contained "no language regarding wages, hours, overtime compensation, or other rights, duties, and responsibilities regarding wages generally found in employment contract." *Sanchez,* 762 F.3d at 1142.   In *Sanchez*, the plaintiffs argued that because the contract at issue related solely to confidentiality and competition, the arbitration clause covers only disputes relating to the subject matter of the contract.   *Id.* at 1145.   Relying on its precedent and Supreme Court precedent that "all doubts must be resolved in favor of coverage," the court ruled that the plaintiffs' FLSA wage disputes fell within the scope of the arbitration clause.   *Id.* at 1148 (*citing Moses*, 460 U.S. at 24-25).

Here, the Employment Agreement requires arbitration of "*[a]ny* controversies arising out of the terms of this Agreement."   Doc. 8 at 13, ¶14 (emphasis added). The Employment Agreement exclusively covers Plaintiff's employment relationship with the Defendants.   The specific terms of the Employment Agreement include Plaintiff's services to Defendants and, in exchange, Plaintiff's compensation.   In exchange for her services, Plaintiff was to be compensated "the sum of $14/hour the first 60 days and $35,000/year following the onboarding and training period."   Doc. 8 at 13, ¶3.   Plaintiff is alleging that she was misclassified as exempt and deprived overtime wages while she worked as a staffing coordinator.   She does not dispute that on September 2014, she was promoted to account manager.   Doc. 12 at 3.   The

relevant timeframe, therefore, is March through September of 2014, which includes her payment of $14 per hour at least "the first 60 days," as called for under the agreement, and $35,000 per year therafter.

Based on the foregoing and the liberal federal policy "resolving any doubts as to the scope of arbitrable issues in favor of arbitration," Plaintiff's FLSA claims for overtime compensation fall within the purview of the arbitration clause of the Employment Agreement. *Moses*, 460 U.S. at 24-25. See also *Gregory v. Electro-Mechanical Corp.*, 83 F. 3d 382, at 384 (11th Cir. 1996) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted"). Additionally, Plaintiff's unjust enrichment claims arise from the same factual basis as her FLSA claims, fall under the terms of the Employment Agreement, and are thus also arbitrable. *See Senti v. Sanger Works Factory, Inc.*, No. 606CV-1903-ORL-22DAB, 2007 WL 1174076 (M.D. Fla. Apr. 18, 2007). Plaintiff's argument that "any ambiguity as to whether arbitration would apply is to be construed against the drafter, which is Defendant" (Doc. 9 at 14, n. 4) ignores Supreme Court precedent requiring any doubts as to the scope of arbitrable issues, if the problem is the construction of the contract language itself, to be resolved in favor of arbitration.

A party waives a right to arbitrate when: (1) the party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate; and (2) this participation results in prejudice to the opposing party." *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (*internal*

*citations omitted*).   Moreover, "[p]rejudice exists when the party opposing arbitration undergoes the types of litigation expenses that arbitration was designed to alleviate." *Id*. (internal citations omitted).   Plaintiff filed their Complaint on September 11, 2015.  Doc. 1.  Defendants filed the instant motion on October 14, 2015.   The parties have not engaged in substantial litigation so as to cause prejudice to Plaintiffs.[3]   The undersigned does not find that Defendants waived their right to arbitrate, and Plaintiff has not argued so.

Defendants request that the Plaintiff should be required to arbitrate her claims on an individual basis.   Plaintiff has not made any arguments regarding this request.   The Employment Agreement does not address Plaintiff's rights to bring a class action, and is otherwise silent as to whether it bars class arbitration.   When an agreement is silent with respect to the availability of class arbitration under an agreement, the question remains whether it is the court or the arbitrator that must decide whether the agreement permits class arbitration.   In *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), a four-Justice plurality of the Supreme Court determined such an issue was for the arbitrator to resolve rather than the court.   As one court in this district has stated,

> [t]he plurality opinion reasoned that a class arbitration issue begs the question of "what kind of arbitration proceeding the parties agreed to," which "concerns contract interpretation and arbitration procedures," not

---

[3] On December 10, 2015, Plaintiff filed an Unopposed Motion to Extend Deadline to Seek Class Certification Under Local Rule 4.04 and Incorporated Memorandum of Law, seeking to extend the deadline until the Court rules on the present motion so as to "conserve limited judicial resources and to not burden the parties."   Doc. 16.   The Motion was granted. Doc. 17.

whether arbitration between certain parties or over a certain dispute is appropriate in the first place.

*Jackson v. Home Team Pest Def., Inc.*, No. 6:13-CV-916-ORL-22, 2013 WL 6051391, at *2 (M.D. Fla. Nov. 15, 2013) (quoting *Bazzle*, 539 U.S. at 452-53).   Relying on *Bazzle*, the Eleventh Circuit subsequently held "[w]hen a contract is silent as to whether it prohibits class arbitration, the arbitrator, rather than the court, must resolve the issue as a matter of state law." *Rollins, Inc. v. Garrett*, 176 F. App'x 968 (11th Cir. 2006).   Since *Bazzle*, however, the Supreme Court reviewed an arbitral decision, which held that class arbitration was available under an agreement in which the parties were silent with respect to that issue.   *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).   The Court ultimately held that the arbitration panel exceeded its powers by imposing its own policy choice on the issue of availability of class arbitration.   *Id.* at 673-77.   The Court emphasized, however, that in Bazzle "only the plurality" decided that an arbitrator rather than a court should decide whether a contract permits class arbitration.   *Id.* at 680.   The Court also declined to revisit that question since the parties in the case before it had explicitly requested the arbitrator to determine whether class arbitration was permitted.   *Id.*   The Court also emphasized the differences between class arbitration and individual arbitration and cautioned against finding that parties implicitly agreed to authorize class arbitration where an agreement is otherwise silent on the issue.   *Id.* at 685-87.   Following this precedent, courts are split whether the district courts or arbitrators should decide whether an arbitration proceeding

should proceed on a class basis where the arbitration provision is silent or ambiguous as to class arbitration.   *See Rollins*, 176 F. App'x 968; *Jackson*, 2013 WL 6051391, at *2 (discussing cases).   In *Jackson*, the plaintiff argued that the arbitration agreement was ambiguous with respect to class arbitration.   The court ultimately held that, "[w]here the dispute is over the *existence* of a provision forbidding class arbitration, not its *enforceability*, precedent suggests that the necessary responsibility to interpret the contract's language rests with the arbitrator." *Jackson*, 2013 WL 6051391, at *2.   Similarly, although the undersigned recommends that the Court compel Plaintiff to arbitrate her claims under the Employment Agreement, the order should not specify that the claims be brought as an individual action.   Referral of this issue to the arbitrator is appropriate under the circumstances of this case.

> II.   **The SAO Acknowledgement**

Since the undersigned finds that the Employment Agreement is a valid agreement that requires the parties to arbitrate the issues in this case, it need not determine the validity of the SAO Acknowledgment.   To the extent that Defendants may argue that the SAO Acknowledgment required a waiver of additional rights, such as Plaintiff's waiver to bring a class action, a review of the SAO Acknowledgment is appropriate.

Defendants argue that Plaintiff is precluded from proceeding with a class action pursuant to the SAO Acknowledgement in which she agreed "to participate in any legal dispute with any Beneficiary only in my individual capacity, not as a

member of a representative class or part of a class action."   Using the general principles of contract formation under Florida law, as recited above, the Court finds that the SAO Acknowledgment is a valid agreement between Plaintiff and SOI.   The Declaration of Defendant Antonio and the attached exhibits sufficiently shows that Plaintiff assented to the terms of the SOI Acknowledgment.   Furthermore, as Florida courts recognize, there is sufficient consideration between Plaintiff and SOI because both parties agreed to submit to arbitration.   *Kinko's Inc.*, 901 So. 2d at 355. The Agreement, however, is not a valid agreement between Plaintiff and Defendants. Defendants did not sign the SOI Acknowledgment and there is nothing to indicate that Defendants assented to its terms.   To the contrary, the Employment Agreement, to which the Defendants did assent, includes a provision that states that "[the Employment Agreement] contains the entire understanding of the parties and . . . [t]here are no other agreements, representations, or warranties not set forth herein." Doc. 8 at 14, ¶19.   Furthermore, the text of the SOI Acknowledgment gives no indication that that it is intended to waive or modify any provision of the Employment Agreement.   The SOI Acknowledgment does not even mention the Employment Agreement.

Defendants have cited three cases in which the courts upheld similar agreements to the SOI Acknowledgment.   Doc. 12 at 4.   (*citing Nereim v. Premara Fin., Inc.*, 2014 WL 2882692 (W.D.N.C. Jun. 24, 2014); *Carter v. Fresh Ideas Mgmt., LLC*, 2012 U.S. Dist. LEXIS 157434 (W.D. Mo. Nov. 2, 2012); *Berger v. Sandlian Mgmt.*, 2007 WL 2323382 (S.D. Ohio Aug. 9, 2007)).   In each case, however, the court

was presented with only one agreement. *Carter* and *Berger* did not involve any challenge to the formation of the agreement, the scope of the agreement, or applicability of the agreement to either party. In *Nereim*, the court refers to the agreement, which is very similar to the SOI Acknowledgment, as the "employment agreement." 2014 WL 2882692, at *1. In *Nereim*, Plaintiff did not provide any reason why the arbitration agreement was unenforceable and, relying on North Carolina contract law, the court held it was a valid agreement between the plaintiff and employer. Id. at *2. The most notable distinguishing factor in the instant case is that both parties agree that they assented to the Employment Agreement, which represents that "this Agreement contains the entire understanding of the parties." The court in *Coyne v. Strategic Bus. Partners, LLC*, No. 09 C 758, 2011 WL 892652, at *1 (N.D. Ill. Mar. 14, 2011) was presented with similar facts and ruled the agreement unenforceable.

Defendants argue, in the alternative, that they may enforce the SOI Acknowledgment as third-party beneficiaries. "A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167 (11th Cir.2011). There are exceptions to this rule, however, as the Supreme Court has noted that "a nonparty to a contract may have the legal right to enforce its provisions "through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* at 1168 (*citing Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009)). State law governs the question whether a nonparty

may enforce an arbitration agreement. *Id.* at 1170. To qualify as third-party beneficiaries under Florida law, the SOI Acknowledgment had to be executed "for the primary and direct benefit of" Defendants. *Peters v. The Keyes Co.*, 402 F. App'x 448, 451 (11th Cir. 2010) (citing *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA, 2004)). The agreement "must clearly express" this intent, and it is not enough that the nonparty received "only an incidental or consequential benefit of the contract." *Morgan Stanley DW Inc.*, 873 So. 2d at 403.

A portion of the SAO Acknowledgement identifies the Defendants as beneficiaries, particularly where it states that "any dispute involving SOI, Company, or any benefit plan, insurer, employee, officer, or director of SOI or Company (all of which are beneficiaries to these Acknowledgement) . . . will be resolved through arbitration." When read in entirety, however, the SAO Acknowledgment purports to provide only incidental or consequential benefit to the Defendants. For instance, the remaining portions of the SAO Acknowledgment seem to outline Plaintiff's rights against illegal discrimination and harassment in the workplace (Doc. 8, at 15, ¶2), the procedure for reporting such violations (*Id.* at ¶3), SOI and Plaintiff's waiver of jury trial (*Id.* at ¶4), identification of Plaintiff's relationship with SOI, regardless of her relationship with Defendants (*Id.* at ¶5), SOI's requirements of Plaintiff if she is injured on the job (*Id.* at ¶7), and SOI's disclaimer of liability in that "SOI is not responsible for any obligation Company has to me such as promises or contracts regarding length or terms of my employment, my pay, or other consideration, or benefits." (*Id.* at ¶8). Thus, read in entirety, there is no indication of a clear intent

that the SAO Acknowledgement was executed for the *primary* and direct benefit of the Defendants.   Accordingly, Defendants may not move to enforce its terms. Plaintiff did not waive her rights to be a member or representative of a class or part of class action.   Since the Defendants are not third-party beneficiaries under the SOI Acknowledgment, it is not necessary to address Plaintiff's claims, and Defendant's responses, of whether the SOI Acknowledgment terminated at the same time Defendant's relationship with SOI was terminated.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.     Defendant's Motion to Compel Arbitration and Incorporated Memorandum of Law (Doc. 8) be **GRANTED**.

2.     All proceedings in this action be **STAYED** until notification by the parties that arbitration has been completed and that the stay is due to be lifted, or the case is due to be dismissed.

3.     The parties be required to notify the Court of such matters within seven (7) days of the conclusion of arbitration proceedings.

4.     The parties be directed to file a joint written status report regarding the status of arbitration on or before **April 12, 2016** and every ninety days thereafter.

**DONE** and **ENTERED** in Fort Myers, Florida on this 12th day of January, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record